# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    No. 2:19-cr-02753-RB-1

EDWARD VERDUGO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

While investigating allegations of child abuse, officers were invited into the home of Veronica Villareal and Defendant Edward Verdugo. Once inside, they immediately smelled burnt marijuana. After Villareal's son admitted to smoking marijuana and possessing paraphernalia, officers sought a warrant to search the entire home. In that search, they discovered approximately 17.4 grams of heroin and a firearm in a black bag belonging to Verdugo. In a separate Opinion (Doc. 42), the Court denied Verdugo's Motion to Suppress (Doc. 28). Before the Court are two additional motions: the government's Motion to Allow Expert Testimony (Doc. 27) and the government's Motion to Admit Certified Business Records (Doc. 32).

**I.    Background**[1]

On May 15, 2019, Sergeant Antonio Palomares and two other officers went to Villareal's home (Doc. 39 (Tr.) 5:14–15), to investigate "allegations of possible child abuse" (Tr. 9:1–2.) Villareal let the officers into her home—a double-wide trailer—and answered their preliminary questions. (Tr. 9:6–9.) After concluding the questioning, Agent Ray James "smelled the odor of burnt marijuana . . . ." (Tr. 9:10–14.) Villareal responded that "it was probably her son smoking

---

[1] The facts are largely derived from the January 16, 2020 hearing transcript (Doc. 39).

marijuana and she offered to call him" from his room. (Tr. 9:15–24.) Her son admitted smoking, having paraphernalia, and possessing "a small amount of marijuana." (Tr. 10:1–5.) Based on the smell, officers requested to search the home for controlled substances and paraphernalia. (Doc. 31-1 at 4.) Rios executed the search warrant and opened the black bag upon entering the bedroom. (Tr. 43:5–7.) In total, the officers found two handguns and 17.4 grams of heroin during the search. (Doc. 1 (Compl.) ¶¶ 5–6.)

## II. Motions in Limine

### a. Expert Testimony from DEA Agent Joseph Montoya and forensic scientist Alexandra Smith.

Federal Rule of Evidence 702 allows for expert opinion testimony when:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods of the facts of the case.

Fed. R. Evid. 702. The Supreme Court holds that district courts must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The court must determine whether the expert is qualified and that the opinion proffered is reliable. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). *Daubert* holds that to be reliable: a theory must be offered in a testable form; it must be subject to peer review; its error rates must be shared; and it must be accepted in the scientific community. *See* 509 U.S. at 593–94.

Here, Agent Montoya will provide information on how "individuals and organizations package, conceal, transport, and distribute heroin." (Doc. 27 at 6.) Based on his 22 years of experience, Montoya will also discuss the street value of the drug; the weight that dealers typically

distribute; that the amount seized is "consistent with the intent to distribute"; and the "tools of the drug trade." (*Id.*) At the hearing, Verdugo objected to the "tailoring of the testimony" and the agent's reliance on experience instead of articulable facts. (Tr. 69:2–19.)

Courts have frequently allowed expert testimony from law enforcement agents with experience to speak about drug-related offenses. *See United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009); *see also United States v. Walker*, 179 F. App'x 503, 507 (10th Cir. 2006) (arguing that most jurors would not be familiar with specific drug-related information); *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991) (same). The Court will allow Agent Montoya, based on his experience, to discuss factors such as: the street value of heroin; the weight and amount of narcotics typically sold; the weights that demonstrate propensity to distribute; the tools of drug distribution; and descriptions about how organizations manufacture, package, and sell drugs. The average juror may have some familiarity with narcotics, but the specific details of the drug business are not common knowledge. The Court will not, however, allow Agent Montoya to specifically profile this case, which might unfairly prejudice a jury's view of Verdugo.

In addition, the tests performed by Smith are standard within her field of expertise and employed only to confirm that heroin was found at Verdugo's home. At the hearing Verdugo stipulated that he had no objection to Smith. (Tr. 67:6-8.) Therefore, the Court will allow testimony from both expert witnesses.

    **b.**    **Certified Business Records**

The Federal Rules of Evidence allow courts to include records produced in the normal course of business. Rule 803(6) allows such records when: (A) someone with knowledge timely generated it; (B) it was retained "in the course of a regularly conducted activity"; (C) it was made in the regular course of business; (D) custodian testimony accompanies the records or they are

certified according to Rule 902(11) or (12); and (E) the defendant does not show a lack of authenticity. Fed. R. Evid. 803(6). In addition, Rule 902(11) states that a record complying with Rule 803(6)(A)–(C) is self-authenticating when it includes a custodian certification and is offered in time for the opponent to review the documents. Fed. R. Evid. 902(11).

The government wishes to include records "from firearms manufacturer Smith & Wesson that establish these firearms were made in Massachusetts in the early 1990s, hence they travelled from one state to another prior to Defendant's possession as charged." (Doc. 32 at 3.) The records "contain[] identifying information about the two firearms recovered from the Defendant's residence such as caliber, type of firearm, serial number, barrel length, SKU, etc. This specific information identifies the two particular firearms from the thousands of firearms produced . . . over the years . . . ." (*Id.* at 6.) Moreover, these records contain no testimonial statements and are self-authenticating, given the accompanying certification from Smith & Wesson employee Sean Terry. (Doc. 32-1 at 1.) At the hearing, Verdugo did not object to the inclusion of this evidence. (Tr. 71:10–12.) As a result, the business records are admissible.

**THEREFORE**,

**IT IS ORDERED** that the Motion to Allow Expert Testimony (Doc. 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Admit Certified Business Records (Doc. 32) is **GRANTED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**